IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BOBBY TARVER,              )
                            )
        Petitioner,       )
                            )
vs.                         )      Civil Action No. 07-00294-CG-B
                            )
KIM T. THOMAS,[1]  Commissioner,   )
Alabama Department of Corrections,  )
                            )
       Respondent.      )

## ORDER

The Petitioner, Bobby Tarver, was convicted of capital murder by an Alabama jury and sentenced to death.   Before the Court is Tarver's amended petition for a writ of habeas corpus challenging the constitutionality of his conviction and sentence.

## I.    FACTS

On December 1, 1981, two friends picked up Tarver, then twenty-one years old, at his home.   The three men drove to an acquaintance's house to retrieve a 12-gauge shotgun.   Tarver's friends then dropped him off at a convenience store near downtown Mobile, Alabama.   Tarver intended to rob the store but changed his mind after realizing the store was crowded.   Instead, he approached a taxicab parked outside of the convenience store.   The cab's driver, Percy Gibson, was seated

---

[1]   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Kim T. Thomas, the current Commissioner of the Alabama Department of Corrections, for Richard Allen, who formerly served in that capacity.

in the vehicle.   Shotgun in hand, Tarver demanded Gibson's money.   Gibson responded that he only had forty cents, which he offered to Tarver.   Tarver ordered Gibson out of the car, escorted him to the side of the store, and shot him in the side. At trial, Tarver maintained that he dropped the gun, causing it to discharge accidentally.   However, an autopsy and testimony at trial indicated that the muzzle of the gun was placed against Gibson's skin or clothing when it discharged.   Gibson died after being transported to a hospital.

Tarver fled the scene.   Later that night, he called police to report that he had witnessed the murder and implicated a man by the name of "Arthur Patterson." After further investigation, Tarver was arrested for murder of Gibson.

## II.   PROCEDURAL HISTORY

In 1982, a jury convicted Tarver in the Circuit Court of Mobile County, Alabama, for murder during a robbery in the first degree, a capital offense under state law.   See Ala. Code § 13A-5-40(a)(2).   On direct appeal, the Alabama Court of Criminal Appeals reversed Tarver's conviction on the basis of prosecutorial misconduct and remanded for a new trial.   Tarver v. State, 492 So. 2d 328 (Ala. Crim. App. 1986).   Tarver was retried and again convicted.   The jury returned an advisory verdict recommending life without parole.   The trial judge held a sentencing hearing and, overriding the jury's recommendation, sentenced Tarver to death.   On direct appeal, the Alabama Court of Criminal Appeals affirmed, Tarver v. State, 553 So. 2d 631 (Ala. Crim. App. 1989), as did the Alabama Supreme Court, Ex parte Tarver, 553 So. 2d 633 (Ala. 1989).   The United States Supreme Court

denied certiorari on April 16, 1990, <u>Tarver v. Alabama</u>, 494 U.S. 1090 (1990), and denied rehearing on June 11, 1990, <u>Tarver v. Alabama</u>, 496 U.S. 932 (1990).

On May 20, 1991, Tarver filed a petition under Alabama Rule of Criminal Procedure 32 in the Circuit Court of Mobile County, Alabama.  He amended the petition in 1997.  On June 13, 2001, the circuit court denied the petition in a 54-page order.  <u>Tarver v. State</u>, No. 82-231.01 (Ala. Cir. Ct. June 13, 2001) (SR. 23-66).[2]  The Alabama Court of Criminal Appeals remanded with instructions for the trial court to make more detailed findings on the issue of whether Tarver was mentally retarded.  <u>Tarver v. State</u>, 940 So. 2d 312 (Ala. Crim. App. 2004).  On remand, the circuit court held an evidentiary hearing on this issue (SR. 18-49), and concluded, in a 47-page final order, that Tarver was not mentally retarded.  <u>Tarver v. State</u>, No. 82-231.60 (Ala. Cir. Ct. May 2, 2005) (SR. 23-68).  The Alabama Court of Criminal Appeals affirmed in a 60-page memorandum opinion.  <u>Tarver v. State</u>, No. 00-2267 (Ala. Crim. App. Nov. 23, 2005) (SR. 23-69).  On April 21, 2006, the Alabama Supreme Court denied Tarver's petition for a writ of certiorari.  <u>Ex parte Tarver</u>, No. 05-0526 (Ala. Apr. 21, 2006) (SR. 23-70).

Tarver filed a 28 U.S.C. § 2254 petition in this Court on April 20, 2007 that he amended on April 30.  In it, he raises eleven primary arguments, along with numerous sub-arguments.  The response of the Commissioner of the Alabama Department of Corrections takes two forms.  First, the Commissioner argues that some of Tarver's claims have been considered and rejected on the merits in state

---

[2]   Citation to the state court record ("SR. #-# at #") indicates the volume number, tab number (if any), and page number.

court proceedings, and therefore, this Court is statutorily barred from reviewing them.   Second, he argues that Alabama courts have found that Tarver procedurally defaulted the remaining claims by either failing to meet his burden of proof or failing to raise them at trial, in a motion for a new trial, or on direct appeal.

## III.   DISCUSSION

This section is organized according to the state courts' disposition of Tarver's claims.   Some of the claims are discussed in Part A, "Claims Rejected by Alabama Courts on the Merits," and the remainder is discussed in Part B, "Claims Found Procedurally Defaulted by Alabama Courts."

### A.   Claims Rejected by Alabama Courts on the Merits

Several of Tarver's claims have been considered and rejected on the merits in state court proceedings.   The first claim is that Tarver is mentally retarded, and therefore, his execution is constitutionally barred by the Eighth Amendment, as explained in Atkins v. Virginia, 536 U.S. 304 (2002).   The remaining claims rejected on the merits consist of various allegations that he received ineffective assistance of trial and appellate counsel.   (The ineffective assistance of counsel discussion here addresses all but one of the ineffective assistance claims raised by Tarver; the remaining claim is discussed in Part III.B.)

Section 2254(a) of Title 28 of the United States Code provides that "a district court shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.   28 U.S.C.

§ 2254(a) (2006).    Because Tarver's habeas petition was filed after April 24, 1996, it
is subject to the more deferential standard for review of state court decisions under §
2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of
1996 ("AEDPA").    See Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.    "Under
AEDPA the role of the federal court . . . is strictly limited."    Jones v. Walker, 496
F.3d 1216, 1226 (11th Cir. 2007).    This Court no longer has "plenary authority to
grant habeas relief" but rather, this Court's "authority to grant relief is now
conditioned on giving deference to the states."    Id.    Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of facts in light of the evidence presented in the State
>> court proceeding.

§ 2254(d).

Tarver does not dispute that his Atkins and ineffective assistance claims have
been "adjudicated on the merits in State court proceedings."    Instead, he maintains
that the courts wrongly decided these claims against him.    Accordingly, Tarver's
petition may be granted only if one of the two enumerated AEDPA exceptions
applies.    In deciding whether either exception applies, "a determination of a factual
issue made by a State court shall be presumed to be correct," unless the petitioner

"rebut[s] the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (explaining that a federal court can disagree with a state court's factual finding, and when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 496 F.3d 1216, 1226-27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that the standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact").

        (1)    Atkins

Tarver argues that the Rule 32 court's (or "circuit court's") adjudication of his Atkins claim, and the Court of Criminal Appeals affirmance of it, was unreasonable in light of the evidence presented. For Tarver to be entitled to relief under the "unreasonable application" clause, the state court's application of clearly established federal law must have been "objectively unreasonable," but not necessarily "incorrect." Bell v. Cone, 535 U.S. 685, 694 (2002); see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). This Court agrees with Tarver that the circuit court's conclusion that he is not mentally retarded is unreasonable.

In its order remanding to the circuit court for factual findings on the issue of mental retardation, the Court of Criminal Appeals observed that the Rule 32 record and the records from Tarver's first and second trials contain "substantial evidence indicating that Tarver is mentally retarded." Tarver, 940 So. 2d at 319. It also noted that the presentence investigation reports prepared for both trials reflected that Tarver was diagnosed with mental retardation as a child and placed in special education classes in school. Id.

After an evidentiary hearing, the circuit court issued a 47-page order finding that Tarver was not mentally retarded. On return from remand, the Court of Criminal Appeals, adopting the circuit court's opinion, upheld that finding, saying that the evidence adduced on remand "did not dispel the conflict that existed regarding Tarver's alleged mental retardation; the evidence remains conflicting as to both Tarver's level of intellectual functioning and his adaptive reasoning." (SR. 23-69 at 9.) In dissent, Judge Cobb wrote that the circuit court abused its discretion with respect to numerous findings on its way to rendering a decision that conflicted with the evidence (SR. 23-69 at 6, Cobb, J., concurring in part, dissenting in part), and prophesied, "[I]f this death sentence is not overturned by an Alabama Court, I am convinced that the Alabama Supreme Court or a federal court will do so during the proceedings that will inevitably follow." (Id. at 28).

The starting point for this federal habeas court is Atkins v. Virginia. In Atkins, the Supreme Court held that execution of a defendant with mental retardation constitutes cruel and unusual punishment and therefore is barred by the

Eighth Amendment.   536 U.S. at 321.   The Court refused to adopt a definition of mental retardation for purposes of the death penalty, leaving to the states "the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences."   Id. at 317.

Alabama applies the "broadest" definition of mental retardation, which is composed of the following factors, all of which must be present: "(1) significantly subaverage intellectual functioning (*i.e.*, an IQ of 70 or below); (2) significant or substantial deficits in adaptive behavior; and (3) the manifestation of these problems during the defendant's developmental period (*i.e.*, before the defendant reached age 18)."   Smith v. State, 2007 WL 1519869 (Ala. May 25, 2007) (not yet released for publication) (citing Ex parte Perkins, 851 So. 2d 453, 456 (Ala. 2002)).   Applying the evidence offered in the state proceedings to Alabama's definition of mental retardation, the Court concludes that the circuit court's application of Atkins was unreasonable and, upon a de novo review of the record, that Tarver is entitled to § 2254 relief.

The circuit court unreasonably concluded that Tarver failed to establish that he satisfied the first Perkins factor: subaverage intellectual functioning.   When he was fourteen years old, Tarver scored a 61 on the Wechsler Intelligence Scale for Children (WISC) and was deemed to have the mental capacity of an eight-year-old. As a result, he was placed in a school program for mentally retarded students. (SR. 14, Pet'r Ex. 13 at 339.)   Two years later, at the age of sixteen, he scored a 72

on the Wechsler Adult Intelligence Scale (WAIS), and his reading level was determined to be below a second-grade level.[3] (Id. at 340.)

In 1995, Dr. Henry Dee administered the Wechsler Adult Intelligence Scale-Revised (WAIS-R). Although Tarver scored a 76, Dr. Dee testified on remand that Tarver has mental retardation because his "adaptive skills are very poor" and his IQ score was only one point above the range of mental retardation. (SR. 18-49 at 119); see Atkins, 536 U.S. at 309 n.5 ("It is estimated that between 1 and 3 percent of the population has an IQ between 70 and 75 or lower, which is typically considered the cutoff IQ score for the intellectual function prong of the mental retardation definition." (citing 2 Kaplan & Sadock's Comprehensive Textbook of Psychiatry 2952 (B. Sadock & V. Sadock eds., 7th ed. 2000)) (emphasis added)). Tarver was given the same test by the State's psychologist, Dr. Harry McClaren. This time, Tarver scored a 74. Dr. McClaren reviewed Tarver's previous evaluations and IQ scores and testified that "going back to age fourteen, . . . I have no doubt that he is of limited intellect, probably best classified as mildly mentally retarded." (SR. 13 at 146-47.)

In 2004, in advance of the remand hearing, Tarver was evaluated by a State-retained expert, Dr. Glen King. Dr. King administered the WAIS-III to Tarver, who posted a 59. Because of the disparity between this score and Tarver's previous, higher scores, Dr. King administered the WAIS-III again. Tarver scored a

---

[3]   According to one of the presentence investigation reports, because of Tarver's low intelligence, ten points should have been subtracted from his score of 72, thereby placing Tarver, with an adjusted score of 62, in the moderately retarded range. (SR. 6-24, Court's Ex. 1 at 6.)

61.   More important to Dr. King than the similarity in IQ scores was the fact that Tarver returned internally consistent scores on the WAIS-III sub-tests.   Dr. King concluded that Tarver "is, in fact, mentally retarded."   (SR. 18-49 at 36, 45.)

It is on these facts that the circuit court concluded, "There is no doubt that Tarver's IQ lies in the mid-70's and is best classified as borderline intellectual functioning."   The court reached this conclusion, in part, because it refused to consider Tarver's three lowest scores—two 61's and a 59.   The court specifically refused to consider the two low scores from Dr. King's tests because they differed so dramatically from Tarver's higher scores.   According to the circuit court, "Dr. King's findings cannot be reconciled with the results reached by Dr. Dee and Dr. McClaren," and "the only logical conclusion for such a precipitous drop in intellectual functioning is that Tarver was malingering on Dr. King's tests."   The court also refused to credit Dr. King's testimony because Tarver's responses to the WAIS-III were inconsistent with his responses on the WAIS-R administered by Dr. Dee and Dr. McClaren.

This Court is concerned about the circuit court's disregard for a substantial amount of evidence undermining its conclusion.   The circuit court stated that the "only logical conclusion" for the drop in IQ score is that Tarver was malingering.   However, no expert testified to this conclusion, and Dr. King offered a logical explanation for the difference in scores: a person taking the WAIS-III, because it is a modernized version of the WAIS, should be expected to score seven points lower than

on the WAIS.[4]  In addition, after Tarver posted low IQ scores, Dr. King evaluated him for the specific purpose of determining whether he was malingering.  Dr. King testified that, based on the results of the tests and the fact that Tarver performed consistently on different tests administered at different times, Tarver had put forth his best effort on the IQ tests and was not malingering.  (SR. 18-49 at 30-32.)  Dr. Dee (SR. 13 at 71-73) and Dr. McClaren (SR. 19 at 191-92) testified that, based on their evaluations of him, they did not believe Tarver was malingering on their tests, nor could they say whether Tarver was malingering on Dr. King's tests.

Any concern that Tarver was malingering in hopes of creating a post hoc justification for revoking his death sentence is further belied by the fact that Tarver was diagnosed with mental retardation before he was eighteen years old, placed in special education classes, and determined to have a second-grade reading level at the age of sixteen.  And, as the circuit court confirmed through questioning on remand, a person's IQ—and therefore intellectual capacity—is determined by the time he is eight or ten years old.  (SR. 18-49 at 47.)  The circuit court's malingering justification for ignoring Dr. King's findings is at odds with Dr. Dee's testimony that "the WAIS-III [on which Tarver scored 59 and 61] would be an accurate reflection of his current level of mental functioning."  (SR. 18-49 at 94.)  In fact, Dr. Dee testified that "if anything, Dr. King's results seem to bolster [the conclusion that Tarver is mentally retarded] since he's using . . . a better test than I was using back

---

[4] Dr. Dee offered a similar explanation: the difference in scores can be attributed to the re-standardization of the WAIS over the years, especially since "the WAIS-R was . . . found to be insensitive at the lower end.  In other words, it didn't identify an adequate number of people that's functioning at a low level."  (SR. 18-49 at 91.)

in '94 or '95, in other words, [it] seemed to have more validity."   (Id. at 105.)   For the circuit court to discount Dr. King's testimony based on a reason not supported by any evidence in the record and contradicted by expert testimony is unreasonable.

The evidence of Tarver's mental retardation is overwhelming.   First, all of the experts at some point testified that Tarver was mentally retarded.   See SR. 18 at 27, 31 (Dr. King); SR. 13 at 147 (Dr. McClaren); SR. 19 at 118 (Dr. Dee).   Dr. McClaren initially testified to this conclusion, but changed his testimony at the remand hearing, saying that "because of the experiences of doing assessments on people after the Atkins decision, I think I have a better understanding of the diagnosis of mental retardation than I did in 1997." (SR. 19 at 198.)   Dr. McClaren's change in opinion is peculiar since Atkins did not dictate how to determine whether a defendant is mentally retarded.   See Atkins, 536 U.S. at 317 (observing that "[t]o the extent there is serious disagreement about the execution of mentally retarded offenders, it is in determining which offenders are in fact retarded," and leaving to the states the responsibility of doing so).   Second, the average of Tarver's IQ test scores—derived from the six IQ tests he has taken since the age of fourteen—is 67, which is indisputably within the range of mental retardation.   See Thomas v. Allen, 607 F.3d 749, 757 (11th Cir. 2010) (district court did not clearly err in finding significantly sub-average intellectual functioning during developmental period where the mean of petitioner's scores was significantly below 70); Holladay v. Allen, 555 F.3d 1346, 1357 (11th Cir. 2009) (average of adult IQ test scores was less than 70).   Third, the presentence report prepared by the Alabama Board of Pardons and

Paroles explained that Tarver's 1977 score of 72, once adjusted for his low intellect, more accurately approached 62. The report noted that Tarver had "perceptual problems, and is impulsive and immature," and that his "educational abilities are very limited." (SR. 6-24, Court's Ex. 1 at 6.) Fourth, the Alabama Department of Corrections observed in 1987 that Tarver "appears to be functioning with limited intelligence" and showed "[e]vidence of mental retardation." (SR. 14, Pet'r Ex. 16 at 363.) Finally, at sentencing after retrial, the trial court found as a non-statutory mitigating factor that Tarver "is moderately retarded." (SR. 6-23 at 12.).

The circuit court's decision was unreasonable for two additional reasons. First, the court refused to consider Tarver's score of 61 that he posted at the age of fourteen. No one has suggested that this score was an unreliable measure of Tarver's intellect. Yet the circuit court disregarded it without explanation. Second, contrary to the circuit court's finding, not all of Tarver's responses on the WAIS-III were inconsistent with his responses on the WAIS-R. For example, Tarver defined a "penny" for Dr. McClaren (administering the WAIS-R) as "money," but defined "penny" for Dr. King (administering the WAIS-III) as "a little round object." (SR. 23-68 at 13.) Not only are both descriptions correct, but also on re-testing by Dr. King, Tarver answered "money." (SR. 23-69 at 19 n.8.)

In summary, enough evidence was presented below to prove Tarver satisfied the first Perkins factor; that is, he suffers from subaverage intellectual functioning. The circuit court's decision to the contrary was unreasonable.

The circuit court also unreasonably concluded that Tarver possessed adequate adaptive functioning skills, the second <u>Perkins</u> factor.   The generally accepted adaptive functioning skill areas include communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.   American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 41 (4th ed. text rev. 2000).   The circuit court essentially disregarded all expert testimony that, while he could function in society and could perform in some of these skill areas, Tarver's overall deficient level of adaptive skills rendered him mentally retarded. In the 1997 Rule 32 proceeding, Dr. Dee explained:

> If you look at what determines retardation practically speaking, it really isn't IQ.   It's practical social skills, like can you communicate in a written form, can you hold a job, can you independently exist from other people.   In other words, can you maintain an apartment, know how to pay telephone bills and so forth, and all those are assessed, as well as intellectual functioning.   As a practical matter, Mr. Tarver is retarded.   Whether you want to call that mildly or moderately is a matter of taste, I think, and definition.   That isn't really determined by the IQ per se, but these other areas of adaptive functioning.   He is functionally illiterate.   He's never lived independently, never had a job for any sustained period of time.   Under the criteria for the American Association of Mental Retardation, that constitutes mental retardation, especially when taken in conjunction with a low IQ, which he has.

(SR. 13 at 66-67.)

In the same proceeding, Dr. McClaren expressed similar sentiment, saying, "I think all things considered, given his poor coping demands of independent living at the time he was free, makes me think that he's mildly retarded."   (SR. 13 at 148.). He elaborated:

> I have no doubt that he is of limited intellect, probably best described as mildly mentally retarded. I think there's little doubt that he suffers from a degree of brain dysfunction. . . . [B]ottom line is this is a man of limited intellect, probably best classified as mildly retarded, who has a degree of brain dysfunction, who can read and write, do arithmetic at only the first or second grade level.

(Id. at 147.)   Dr. King arrived at the same conclusion after evaluating Tarver in preparation for the hearing on remand.   He tested Tarver on two different adaptive behavior scales, both of which showed substantial deficits.   Discussing Tarver's results on a test designed to gauge independent living skills, Dr. King testified that

> [Tarver] scored low across the board, and he did a little bit better in social adjustment, meaning that he has – and that simply is going to measure things like do you have some friendships in prison. If he does that, he's not totally withdrawn. But he did extremely poorly in memory and orientation, managing money, health and safety issues, and his full scale standard score was at 55 with an average being a hundred. So he was well below average. In fact, it was off bottom of the chart.

(SR. 18-49 at 30.)

Despite this testimony, the circuit court found that Tarver possessed sufficient adaptive functioning skills to take him out of the range of mental retardation.   For example, the court found that Tarver "was able to hold a few jobs for various lengths of time."   (SR. 23-69 at 26.)   The court found that Tarver was literate because a jail official, Captain Kraft, testified that he saw Tarver "reading" the sports page and because Tarver could compose clear and legible notes requesting medical care and items from the canteen.   (Id. at 23.)   The court also found that Tarver did not have substantial deficits in adaptive functioning because he reasoned against robbing the convenience store when it was crowded and attempted to cover

up the murder.  (Id. at 27.)  Finally, the court found that Tarver's use of the unemployment office after being laid off demonstrated his ability to utilize community resources.  (Id. at 28.)

The problem with the circuit court's analysis is that it ignores all of the expert testimony that possession of some social and adaptive skills is not inconsistent with a finding of mental retardation.   As evidence that Tarver had adaptive functioning, the circuit court relied on Tarver's jobs as grocery store stock boy, warehouse worker, and metal separator.  (SR. 18 at 82.)  However, Dr. Dee discounted this work experience because it involved manual labor and because Tarver had never been employed for a substantial period of time in a particular area.   That, along with the fact that Tarver lived at home his entire life, did not take care of his bills and finances, and never lived independently, all support Dr. Dee's finding that Tarver suffered from deficits in his adaptive functioning.

The circuit court also placed too much weight on Tarver's alleged "reading" of the sports page while in prison.   It is possible that Tarver was not actually reading the paper.   Dr. McClaren testified that Tarver was illiterate and functioned only at a first- or second-grade level in reading recognition, spelling, and math.   (SR. 18-49 at 184.)   Dr. Dee also testified that Tarver was functionally illiterate (SR. 13 at 66), and was unsurprised that a person like Tarver may mimic reading the sports page, or even be simply looking at the pictures.   Yet, even if Tarver was reading the paper, his ability to do so does not foreclose a finding of mental retardation.   Dr. King testified that "being mentally retarded depending on the level . . . doesn't

prevent you from becoming literate." (SR. 18-49 at 82.)   And, all three experts testified that even though Tarver could read at a first- or second-grade level, it is his inability to read at an adult level that renders him functionally illiterate.   The circuit court apparently refused to credit this testimony because Dr. Dee and Dr. King failed to conduct "independent testing of adaptive behavior." (SR. 23-68 at 18.) To the contrary, as noted above, Dr. King administered two tests of adaptive functioning, both of which showed significant deficits in adaptive behavior.   The evidence overwhelmingly shows that Tarver suffers from deficient adaptive functioning.

Turning to the third Perkins factor—which the circuit court did not reach—the evidence reveals that Tarver's intellectual and adaptive functioning problems developed before the age of eighteen.   Tarver scored a 61 on the WISC when he was fourteen years old, and, as a result, was placed in a school program for mentally retarded students.   Two years later, at the age of sixteen, he scored a 72 on the WAIS, and his reading level was determined to be below a second-grade level. "There is no Alabama case law stating that a single IQ raw score . . . above 70 automatically defeats an Atkins claim when the totality of the evidence (scores) indicates that a capital offender suffers subaverage intellectual functioning." Thomas, 607 F.3d at 757.   The mean of Tarver's developmental scores is 66.5, clearly within Alabama's range of mental retardation, and the presentence investigation report indicated that Tarver's score of 72 should have been adjusted

downward by 10 points, placing him with an adjusted score of 62.   Therefore, Tarver satisfies the third <u>Perkins</u> factor.

The circuit court's conclusion that Tarver is not mentally retarded is unreasonable in light of the evidence presented.   The court disregarded substantial evidence showing that Tarver was mentally retarded on a basis that finds no support in the record and was flatly rebuked by testing and expert testimony.   The circuit court also unreasonably found that Tarver possessed adequate adaptive functioning abilities.   Tarver's thoroughly documented history of mental retardation forecloses his execution under the Eighth Amendment and <u>Atkins</u>.   Therefore, this Court grants in part Tarver's petition for a writ of habeas corpus and orders that his death sentence be vacated.

(2)   <u>Ineffective Assistance of Counsel</u>

Tarver's remaining claim that the state courts considered and rejected on the merits is that he received ineffective assistance of trial and appellate counsel. Again, this Court may grant Tarver relief only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).

"To prevail on a claim of ineffective assistance, a habeas petitioner must show: (1) that 'counsel's performance was deficient' because it 'fell below an objective

standard of reasonableness,' and (2) that 'the deficient performance prejudiced the defense.'" Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001) (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)) (internal citations omitted).

Deficient performance requires a showing that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990); see also Gallo-Chamorro v. United States, 233 F.3d 1298, 1303 (11th Cir. 2000) (petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms").   In this Circuit, courts will presume that counsel's performance was reasonable and adequate, and habeas petitioners bear the "heavy—but not insurmountable—burden of persuading the court that no competent counsel would have taken the action that his counsel did take."   Haliburton v. Sec'y for Dep't of Corr., 342 F.3d 1233, 1243 (11th Cir. 2003) (internal quotation marks and citation omitted).   The test for reasonableness of performance "is not whether counsel could have done something more or different"; instead, courts consider whether counsel's performance "fell within the broad range of reasonable assistance at trial." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1209 (11th Cir. 2007). Failure to raise nonmeritorious issues does not constitute ineffective assistance of counsel.   Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994).

With respect to the prejudice prong, "a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different

if his lawyer had given adequate assistance." Van Poyck v. Fla. Dep't of Corr., 290

F.3d 1318, 1323 (11th Cir. 2002).   A petitioner must show that his attorney's errors

"worked to his actual and substantial disadvantage." Cross, 893 F.2d at 1292

(quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

Because the petitioner bears the burden of satisfying both prongs of the

Strickland test, the Court need not "address both components of the inquiry if the

[petitioner] makes an insufficient showing on one." Strickland, 466 U.S. at 697.

Courts are free to dispose of ineffectiveness claims on either of Strickland's two

grounds.   Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998).

Tarver argues his trial counsel was ineffective in several respects:

1. Counsel failed to investigate Tarver's troubled background and present evidence of his alcohol dependency;

2. Counsel failed to adequately challenge the waiver of Tarver's Miranda rights;

3. Counsel failed to object to the cruel and unusual nature of executing a defendant with mental retardation;

4. Counsel failed to cite relevant case law regarding suppression of Tarver's custodial statements;

5. Counsel failed to challenge a prospective juror for cause;

6. Counsel failed to secure the testimony of an independent ballistics examiner in support of his theory that the shotgun accidentally discharged;

7. Counsel failed to object to the prosecutor's improper arguments during direct examination, cross-examination, and closing arguments;[5]

8. Counsel failed to object to the trial court's prejudicial jury instructions;

---

5   This claim is discussed infra in Part III.B.1.

9.  Counsel failed to move for a change of venue;

10. Counsel failed to challenge admission of the presentence report; and

11. Counsel failed to challenge Alabama's faulty capital compensation scheme.

Tarver also alleges that his appellate counsel was ineffective for not raising numerous issues on appeal.   As discussed in greater detail below, these claims are due to be dismissed.

The circuit court and the Court of Criminal Appeals found that the majority of the ineffective counsel claims were procedurally barred under Ala. R. Crim. P. 32.6(b).[6]  However, this court may deny relief on the basis of procedural bar only if the last court to address the claim based disposition of the claim on an independent and adequate procedural bar.   The Eleventh Circuit has repeatedly confirmed that Rule 32.6(b) is not an independent and adequate state procedural bar.   Rather, such claims disposed of pursuant to Rule 32.6(b), even summarily, have in fact been considered on the merits.   Frazier v. Bouchard, 661 F.3d 519, 526-27 (11th Cir. 2011); see also Borden v. Allen, 646 F.3d 785, 815-16 (11th Cir. 2011) (an Alabama court's consideration of the sufficiency of the pleadings under Rule 32.6(b) necessarily entails a determination on the merits of the underlying claim).[7] Accordingly, the Court shall treat those ineffective assistance of counsel claims

---

6   Sub-claim 2 (that counsel failed to adequately challenge the waiver of Tarver's Miranda rights) was dismissed on the merits.   (SR. 23-69 at 43-44.)   Sub-claim 7 (that counsel failed to object to the prosecutor's improper arguments) was dismissed under Ala. R. Crim. P. 32.3.   (Id. at 52-55.)

7   In Borden, 646 F.3d at 808 n. 27, the Eleventh Circuit declined to follow the reasoning in Jenkins v. Bullard, 210 F. App'x 895, 900-01 (11th Cir. 2006), in which the court concluded that Rule 32.6(b) was an independent and adequate state ground, because the issue had already been addressed in a published opinion. See, e.g., Powell v. Allen, 602 F.3d 1263, 1273 (11th Cir. 2010).

which the state courts disposed of under Rule 32.6(b)as dismissed on the merits, and not as denied because of procedural bar.   Powell v. Allen, 602 F.3d 1263, 1272-73 (11th Cir. 2010) (summary dismissal of federal constitutional claims under Rule 32.6(b) should be reviewed as a holding on the merits).

(a) Failure to investigate and present mitigating evidence

Tarver argues that evidence of his alcohol dependency and certain childhood problems should have been presented at the guilt phase, as well as the sentencing phase, to show that he could not form the specific intent to kill Gibson.   The Court of Criminal Appeals found that Tarver insufficiently pleaded this ineffective assistance claim.   (SR. 23-69 at 39-43.)   However, Tarver's theory of defense at trial was that the shotgun accidentally discharged.   Thus, Tarver could not have been prejudiced by his counsel's failure to prove that he lacked the capability to form the requisite intent to kill.

Additionally, the record does not support Tarver's argument that trial counsel's failure to present mitigating evidence was not strategic.   (Doc. 2 at 34.) Trial counsel admitted that he did not think Tarver's struggles with alcohol would have impressed the jury.   "Counsel will not be deemed unconstitutionally deficient because of tactical decisions."   McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir. 1984).   Because Tarver has failed to meet both the prejudice and deficiency prongs of Strickland, this claim is due to be denied.

(b) Failure to adequately challenge the waiver of Miranda rights

Petitioner argues that counsel was ineffective for failing to object to the admission of Tarver's custodial statements on the grounds that they were

involuntary.  At trial, Tarver's counsel filed a motion to suppress the statements. This was effective assistance.  It matters not that the motion was ultimately denied.  See Boyd v. State, 746 So. 2d 364, 402 (Ala. Crim. App. 1999) ("Trial counsel is not ineffective for having an objection overruled or a motion denied."). Furthermore, as the circuit court explained, Tarver failed to present any evidence at the Rule 32 evidentiary hearing related to his ability to waive his rights or to support his assertion that the police improperly elicited the statements.   (SR. 23-69 at 43-44.)   Thus, according to the trial court, Tarver failed to show either deficient performance or prejudice.  (SR. 23-66 at 19.)   The trial court's decision was not unreasonable, and therefore, this claim is denied.

(c) Failure to object to the cruel and unusual nature of executing a defendant with mental retardation

Tarver's third sub-claim is that trial counsel was ineffective for failing to challenge as cruel and unusual punishment the imposition of the death penalty on a defendant with mental retardation.  The circuit court found that this claim was moot because Tarver was not mentally retarded.   (SR. 23-69 at 44.)   In light of this Court's abrogation of that holding, the Court must consider whether counsel's failure to object to the death penalty on Eighth Amendment grounds constitutes ineffective assistance.  The Court concludes it is not.  Tarver cannot satisfy the prejudice element because, even had his lawyer objected to the imposition of the death penalty, the trial court, having already decided Tarver was not mentally retarded, would certainly have overruled the objection.  Thus, there is no reasonable probability that had trial counsel objected, the outcome of his trial would have been

different.   See Strickland v. Washington, 466 U.S. at 694 (To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

(d) Filing identical pretrial motions without providing new facts
or additional support

Tarver alleges that at his second trial, his counsel was ineffective for refiling the same pretrial motions that had been filed before his first trial without providing new facts or additional support for the motions.   (SR. 23-69 at 45-46.)   However, Tarver has failed to allege any additional facts that, if offered, would have changed the trial court's ruling on the suppression issue.   He did not even offer any evidence in support of this claim at the evidentiary hearing, and therefore, has failed to demonstrate deficient performance.   He also has failed to demonstrate how the outcome of the trial would have been different if counsel had acted differently.

(e) Failure to challenge a prospective juror for cause

Tarver argues that his counsel failed to challenge for cause prospective juror "K.B." on the ground that K.B.'s former husband was an officer in the Mobile Police Department and the partner of one of the State's witnesses.   To exclude a prospective juror for cause, a party must demonstrate through questioning that the juror lacks impartiality.   Wainwright v. Witt, 469 U.S. 412, 423 (1985).   The party "must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed."   United States v. Chandler, 996 F.2d 1073, 1102 (11th Cir. 1993).   Actual bias exists if a juror is not "capable and willing

to decide the case solely on the facts before him."   Rogers v. McMullen, 673 F.2d 1185, 1190 (11th Cir. 1982).

Without more, the fact that K.B.'s former husband was an officer in the Mobile Police Department and was the partner of one of the state's witnesses is insufficient to show a reasonable probability that counsel's failure to object to juror K.B. for cause would have led to a different result.   Petitioner has failed to offer any evidence of juror bias, and Tarver has failed to convince the Court that K.B. would have been stricken for cause.   Although Tarver offers reasons for why K.B. should have been stricken, he offers no legal support that those reasons would, in fact, have warranted a strike for cause.   Absent this showing, Tarver cannot show that he was prejudiced by counsel's default, and therefore, this claim merits no relief.

> (f)  Failure to secure the testimony of an independent ballistics examiner

Tarver's claim that his lawyer rendered deficient performance by failing to obtain the testimony of an independent ballistics examiner in support of his theory that the shotgun accidentally discharged is without merit.   In affirming denial of this claim, the Court of Criminal Appeals adopted the circuit court's finding that Tarver failed to show that his counsel rendered deficient performance or prejudice resulting therefrom.   (SR. 23-69 at 49).

Reviewing the merits of the state court's finding, this Court concludes that the circuit court did not unreasonably hold that Tarver failed to establish an ineffective assistance claim arising from his counsel's failure to obtain an independent ballistics examiner.   The testimony of the state's witness that Tarver would have endeavored

to rebut was in fact helpful to Tarver, because the expert testified that the gun "accidentally" fired approximately 50% of the time.   Additionally,   Tarver failed to prove at the evidentiary hearing that he could have offered an expert that would offer testimony different from (or more helpful than) the state's expert.   Therefore, Tarver cannot prove that he was prejudiced by his lawyer's decision not to call an independent ballistics expert.

(g) Failure to object to the trial court's jury instruction

Tarver's lawyer did not render ineffective assistance by failing to object to the court's jury instruction on reasonable doubt on the ground that the instruction included phrases outlawed by the Supreme Court in Cage v. Louisiana, 498 U.S. 39 (1990), overruled in part by Estelle v. McGuire, 502 U.S. 62, 72 n.4 (1991).   Cage was decided three years after Tarver was retried, and "counsel's performance cannot be deficient for failing to forecast changes in the law." Hallford v. State, 629 So. 2d 6, 11 (Ala. Crim. App. 1992), overruled on other grounds, Ex parte Woods, 957 So.2d 533 (Ala. 2006).   Moreover, the Court finds that Tarver has not established a reasonable probability that the outcome of his trial would have been different with another instruction.

(h) Failure to move for a change of venue

Tarver's change of venue allegation warrants no relief.   Tarver failed to plead any facts showing "actual prejudice against the defendant or that the community was saturated with prejudicial publicity."   Ex parte Grayson, 479 So. 2d 76, 80 (Ala. 1985).   Moreover, the few jurors who indicated they were aware of the case were removed for cause.   (SR. 23-69 at 57.)   Thus Tarver has not demonstrated

prejudice under Strickland, and the state court's denial of this claim was not unreasonable.

(i)  Failure to challenge admission of the presentence report

Next, Tarver argues that his counsel failed to object to the presentence report, which did not meet the requirements for reliability and neutrality as guaranteed by the Supreme Court in Gardner v. Florida, 430 U.S. 349 (1977) and Proffitt v. Wainwright, 685 F.2d 1227 (11th Cir. 1982), modified on rehearing, 706 F.2d 311 (11th Cir. 1983).  (SR. 23-69 at 48.)   Gardner held that a death sentence may not be imposed on the basis of a presentence investigation report that contains information not disclosed to defense counsel which the defendant has had no opportunity to explain or deny.   430 U.S. at 362.   But there is no evidence before the Court now, nor was there any evidence before the state court, to suggest that Tarver was not given access to all of the information contained within the report. Instead, Tarver's complaint is that the report contained "prejudicial hearsay" and "an extremely prejudicial assessment of Mr. Tarver's reputation in the community." SR. 23-69 at 55-56.   Without more, the Court agrees that this claim is insufficiently pled, and that Tarver's reliance on Gardner is misplaced.

Similarly, Proffitt offers no help.   In Proffitt, two psychiatrists examined the defendant's competence and mental state prior to sentencing.   One of the psychiatrists was unable to attend the defendant's sentencing hearing so his opinion was submitted in a written report.   The defendant requested, but did not receive, an opportunity to cross-examine the psychiatrist concerning the report.   Proffitt, 685 F.2d at 1250-51 & n.36a.

27

The instant case is fundamentally different from <u>Proffitt</u>.   Here, Tarver was permitted to fully cross-examine all of the State's witnesses during the guilt phase of the trial.   Neither the State nor Tarver presented additional witnesses at the sentencing hearing before Judge McRae.   (SR. 6-22 at RR-6.)   Thus, unlike the defendant in <u>Proffitt</u>, Tarver was not denied the cross-examination of a single witness, much less one as critical as the one in <u>Proffitt</u>.

> (j)  Failure to challenge Alabama's faulty capital compensation scheme

Tarver argues that his counsel was deficient due to inadequate compensation. Other capital defendants in this state have advanced similar claims based on Alabama's statutory scheme, and federal courts have found those arguments meritless.   <u>See, e.g.</u>, <u>Hallford v. Culliver</u>, 379 F. Supp. 2d 1232, 1279 (M.D. Ala. 2004) ("The essence of [Petitioner]'s argument becomes simply that the court ought to presume counsel could not provide constitutionally adequate representation because of the inadequate compensation."), <u>aff'd</u>, 459 F.3d 1193 (11th Cir. 2006); <u>Williams v. Alabama</u>, 2012 WL 1339905, at *22 (N.D. Ala. Apr. 12, 2012) ("[T]he assertion that the State of Alabama provides inadequate compensation for capital defense counsel and experts fails to state a basis for habeas relief, and it is due to be denied."); <u>see also</u> <u>McNair v. Haley</u>, 97 F. Supp. 2d 1270, 1275 (M.D. Ala. 2000). The Court does not find that counsel's performance was deficient, and concludes that no habeas relief is due on this claim.

(k) Appellate counsel was ineffective

The Court also concludes that the state courts' finding that Tarver's appellate counsel rendered effective assistance was not unreasonable. At his Rule 32 hearing, Tarver offered no evidence or any testimony in support of this claim. (SR. 23-69 at 60.) Consequently, he did not carry his burden of proving ineffective assistance and prejudice.

For the above stated reasons, the Court finds that neither the trial court nor the Court of Criminal Appeals unreasonably decided that Tarver received effective assistance of trial and appellate counsel, at least with respect to the ineffective assistance claims considered and rejected on the merits.

**B.     Claims Found Procedurally Defaulted by Alabama Courts**

The remainder of Tarver's § 2254 petition is comprised of claims that the Alabama state courts have deemed procedurally defaulted.

The concept of procedural default is derived from the "adequate and independent" state-law ground doctrine originally applied to cases on direct review of state court decisions in the federal courts. See Harris v. Reed, 489 U.S. 255, 260 (1989) ("[The Supreme Court] has long held that it will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision."). In Wainwright v. Sykes, 433 U.S. 72, 81, 87 (1977), the Supreme Court clarified that this doctrine also applies to cases on federal habeas under § 2254. "Under Sykes and its progeny, an adequate and

independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris, 489 U.S. at 262 (citations omitted); Conner v. Hall, 645 F.3d 1277, 1287 (11th Cir. 2011).   In order for a federal claimant's procedural default to preclude federal review, the last state court rendering a judgment in the case must rest its judgment on the procedural default.   Id.   Furthermore, "the procedural bar must be firmly established and a regularly followed state practice."   Cochran v. Herring, 43 F.3d 1404, 1408 (11th Cir. 1995).

The Alabama Court of Criminal Appeals found that Tarver has procedurally defaulted several claims pursuant to various subsections of Rule 32.2(a).   (SR. 23-69 at 4-7.)   These claims are: (1) that he received ineffective assistance of counsel for failing to object to prosecutorial misconduct; (2) that a juror engaged in misconduct; (3) that Tarver did not voluntarily waive his Miranda rights; (4) that the trial court did not consider statutory mitigating factors; (5) that the trial court's standardless override of the jury's advisory verdict violates the Eighth Amendment and the Due Process clause of the Fourteenth Amendment; (6) that the indictment was insufficient and defective; (7) that he was entitled to an individually sequestered jury voir dire; (8) that the evidence was insufficient to sustain his conviction; (9) that the prosecutor engaged in misconduct; and (10) that the trial court's jury instructions were flawed.

"In capital cases—as in all criminal cases—Alabama law effectively requires a petitioner to preserve any federal constitutional error by objection at trial, and to pursue that assertion of error on direct appeal, if the error is capable of being raised at those times." Kennedy v. Hopper, 156 F.3d 1143, 1145 (11th Cir. 1998). Alabama preclude[s] appellate review of issues that could have been raised at trial or on direct appeal. See Magwood v. Smith, 791 F.2d 1438, 1444 (11th Cir. 1986). The Eleventh Circuit is clear that Rule 32.2(a) is an independent and adequate state ground. Mason v. Allen, 605 F.3d 1114, 1121 (11th Cir. 2010); Brownlee v. Haley, 306 F.3d 1043, 1065-66 (11th Cir. 2002); Kennedy, 156 F.3d at 1147. Therefore, these ten claims are procedurally defaulted and will not proceed unless Tarver can demonstrate cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice. See Harris, 489 U.S. at 262.

(1)   Ineffective Assistance of Counsel due to Prosecutorial Misconduct

Tarver argues that he received ineffective assistance of trial counsel because his lawyer failed to object to several instances of prosecutorial misconduct. Tarver attributes the cause of the procedural default to ineffective assistance of counsel, a recognized and sufficient cause of procedural default. See Murray v. Carrier, 477 U.S. 478, 488 (1986). However, even assuming Tarver received ineffective assistance, Tarver cannot show prejudice attributable to receiving ineffective assistance of counsel. Tarver presented no evidence at the evidentiary hearing in support of this allegation. In fact, Tarver did not even question his lawyer about

the allegation.    (SR. 23-66 at 40.)    Nor does Tarver allege that a fundamental miscarriage of justice will result if the Court does not now consider this claim.

(2)    Juror Engaged in Misconduct

Tarver argues that he was denied a fair trial due to juror misconduct during deliberations.    Specifically, he contends that a juror dropped the shotgun on the floor several times to test Tarver's theory that the shotgun accidentally fired. Tarver's direct appeal brief did not raise this claim, and, as the circuit court pointed out in its opinion, there is no explanation given for Tarver's failure to present this claim to the state courts.    (SR. 23-69 at 31-32.)    This claim is, therefore, procedurally barred from federal review.

(3)    Waiver of Miranda Rights

Tarver argues that, given the totality of the circumstances, he did not voluntary, knowingly, or intelligently waive his rights under Miranda v. Arizona, 384 U.S. 436 (1966), to remain silent or have counsel present during custodial interrogations.    Therefore, he argues, the confession he made to law enforcement was improperly admitted by the trial court.    The Court of Criminal Appeals affirmed the trial court's denial of this claim as procedurally barred under Rule 32.2(a)(3) and (5) for failure to raise it at trial or on direct appeal.    (SR. 23-69 at 4-5.)

The Court finds that the Court of Criminal Appeals did rely on a procedural bar, and concludes that Tarver has not shown cause and prejudice, nor that a fundamental miscarriage of justice will result.    In his federal petition, Tarver fails

to offer an explanation as to why he did not make this argument at trial or on direct appeal.   Moreover, Tarver simply alleges that the "introduction of his statement was prejudicial and in violation of Mr. Tarver's rights" (SR. 1-1 at 56), without explaining how introduction of the statement was prejudicial.   Finally, Tarver does not explain what fundamental miscarriage of justice will result if the Court refuses to entertain this claim.   For example, Tarver does not allege that absent the confession, there would be no evidence remaining upon which his conviction could be based, and therefore, he must have been convicted solely on an unconstitutionally admitted piece of evidence.

(4)   <u>Aggravating and Mitigating Factors</u>

Tarver argues that the trial court erred in failing to find two statutory mitigating factors: (1) that the capital offense occurred while Tarver was under the influence of extreme mental or emotional disturbance, and (2) that the capacity of Tarver to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.   He also argues that the trial court erred in concluding that the aggravating factors outweighed the mitigating factors. The Court of Criminal Appeals affirmed denial of this claim on the basis that it was procedurally barred under Rule 32.2(a)(3) and (5) for failure to raise it at trial or on direct appeal.

In his federal petition, Tarver offers no explanation why this claim was not raised at trial or on direct appeal, nor does he explain why, had the court found the statutory mitigating factors, the balance would have tilted from a sentence of death

in favor of a sentence of life without parole.   Therefore, this claim is procedurally barred from federal review.

>  (5)   Jury Verdict Override

Tarver argues that Alabama's system of permitting the trial court to impose the death penalty over the jury's verdict of life without parole violates the federal constitution and the Alabama constitution.   He acknowledges that the trial court denied this claim on the basis that it was not raised at trial, but maintains that because "the question of override is one that continues to evolve in Alabama's capital law, . . . if the punishment no longer comports with the requirements of the Alabama Constitution, it should not matter if this claim was not raised at trial."   (SR. 1-1 at 58.)   He argues that the practice of override "does not require any standard or guided discretion [and] cannot be considered appropriate under the Eighth Amendment or under Article I, § 15 of the Alabama Constitution."   (Id. at 59.)

The trial court did find, and the Court of Criminal Appeals agreed (SR. 23-69 at 5), that this claim was procedurally barred because Tarver did not raise it at trial or on direct appeal as required by Rule 32.2(a)(3) and (4).   Tarver readily admits that he did not raise this issue at trial, and so he cannot meet the "cause and prejudice" justification for the Court's consideration of it now.   Moreover, because current Supreme Court jurisprudence upholds Alabama's sentence override scheme, Harris v. Alabama, 513 U.S. 504, 515 (1995); see also Maples v. Thomas, 132 S. Ct. 912, 917 (2012); Madison v. Comm'r, Ala. Dep't of Corr., 677 F.3d 1333, 1336 (11th

Cir. 2012), Tarver cannot show that a fundamental miscarriage of justice will result if the Court does not entertain this claim.

(6)    <u>Insufficient and Defective Indictment</u>

Tarver argues that the indictment was defective because it contained two counts of capital murder: murder during a robbery under Ala. Code § 13A-5-40(a)(2) and murder during a burglary under Ala. Code § 13A-5-40(a)(4). He argues that the State never offered evidence to support the murder during a burglary count, and that the inclusion of an inapplicable capital count rendered the indictment prejudicial, thereby disqualifying it for use as the basis of a conviction. The Court of Criminal Appeals affirmed denial of the defective indictment claim on the ground that Tarver did not raise it at trial as required by Rule 32.2(a)(3). (SR. 23-69 at 5.) Although the Court of Criminal Appeals included a footnote explaining that this claim was meritless because the indictment did not charge Tarver with murder during a burglary (<u>id.</u> at 5 n.4), it principally relied on a procedural bar as its basis for denying the claim. "[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." <u>See</u> <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994). Therefore, this claim is foreclosed from review by precedent.

Tarver also argues that the jury was impermissibly allowed to consider a "flight" theory of liability, which was not included in the indictment. The Court of Criminal Appeals also affirmed denial of relief on the "flight" claim because Tarver

35

did not raise it at trial or on direct appeal.   (Id. at 7.)   Tarver has failed to allege a cause as to why he procedurally defaulted this sub-claim and certainly has made no showing of prejudice resulting from his default.   As such, this sub-claim is procedurally barred from federal review.

(7)   Voir Dire

Tarver argues that the trial court erred in denying his motion for individually sequestered voir dire.   He argues that such voir dire was necessary because of the pre-trial publicity and to effectively question jurors regarding their attitudes and prejudices concerning race.   He also argues that individually sequestered voir dire was necessary to adequately question jurors about their knowledge of the crime without educating or prejudicing other venire members.   The Court of Criminal Appeals affirmed denial of this claim because Tarver failed to raised it at trial or on direct appeal. (SR. 23-69 at 7.)

Tarver fails to explain in his federal petition why he procedurally defaulted this claim and fails to explain what prejudice results from the default.   In fact, Tarver does not allege one specific fact that he was somehow prejudiced by the circuit court's failure to grant individually sequestered voir dire.   Nor does Tarver allege that a fundamental miscarriage of justice will result if the Court does not now consider this claim.   As such, this claim is due to be denied.

(8)   Sufficiency of the Evidence

Tarver argues that the evidence presented at his second trial was insufficient to sustain the conviction by jury.   He argues that the State did not prove beyond a

reasonable doubt that the killing of Gibson was intentional rather than accidental. The Court of Criminal Appeals affirmed denial of this claim because Tarver did not raise it at trial or on direct appeal. (SR.23-69 at 7.)   Again, Tarver has failed to make the required showing of "cause and prejudice" or explain how a fundamental miscarriage of justice will result if the Court does not consider the claim.

(9)   Prosecutorial Misconduct

Tarver argues that the prosecutor engaged in misconduct during the guilt and penalty phases.   Specifically, he argues that the prosecutor: (1) improperly alluded to the fact that Tarver had been previously tried for murder; (2) expressed his personal opinion as to Tarver's guilt; (3) and exhorted the jury to convict Tarver on the basis of passion and prejudice.   The Court of Criminal Appeals affirmed denial of this claim because Tarver failed to raise it on direct appeal.   (SR. 23-69 at 52.)

Tarver has not argued that there is any cause or prejudice to excuse his procedural default.   In fact, all of the alleged instances of procedural misconduct were known at the time he filed his direct appeal.   Nor does Tarver explain what fundamental miscarriage of justice will result if the Court does not entertain this claim.   Because the state courts have not had a full and fair opportunity to decide these claims, Tarver is procedurally barred by exhaustion principles from pursuing them here. See, e.g., Mancill v. Hall, 545 F.3d 935, 939 (11th Cir. 2008) (explaining that the habeas exhaustion requirement "is not satisfied if the petitioner fails to present his claims to the state's highest court," and that "[s]uch a failure to exhaust can result in a procedural default that bars a federal court from hearing that claim").

(10)   <u>Jury Instructions</u>

Tarver challenges two of the trial court's instructions to the jury.   First, he argues that the sentencing instruction, in which the court explained that the sentence verdict was only a "recommendation," relieved jurors of their sentencing responsibility because they were not "confronted with the truly awesome responsibility of decreeing death for a fellow human."   Second, Tarver challenges as unconstitutional the instruction on reasonable doubt, wherein the court instructed the jury that in order to acquit it had to find "actual and substantial doubt," and possess "an abiding conviction [as] to a moral certainty of the guilt of the defendant." (SR. 6 at 313-14.)

The Court of Criminal Appeals denied this claim with respect to both instructions because Tarver did not raise the claim on direct appeal. (SR. 23-69 at 7.) The Court finds that Tarver did not offer a cause for procedural default with respect to the sentencing instruction, nor has Tarver demonstrated a miscarriage of justice in the Court's refusal to entertain this claim.

With respect to the reasonable doubt instruction, Tarver argues that the claim was not raised on direct appeal due to ineffective assistance of counsel.   As discussed above in Part III.A.2.g, Tarver's counsel did not render ineffective assistance by failing to object to a jury instruction that included phrases describing reasonable doubt, which had not yet been struck down by the Supreme Court in <u>Cage</u>.   <u>See</u> <u>Cooks v. United States</u>, 461 F.2d 530, 532 (5th Cir. 1972) ("Clairvoyance

is not a required attribute of effective representation."). Therefore, Tarver has not demonstrated valid cause for the procedural default.

**IV.    CONCLUSION**

Tarver's petition for a writ of habeas corpus is **GRANTED** with respect to the Atkins claim, and his death sentence is **VACATED**. Tarver is mentally retarded and cannot constitutionally be executed. Tarver's petition is otherwise **DENIED**. **DONE** and **ORDERED** this 24th day of September, 2012.

/s/   Callie V. S. Granade
UNITED STATES DISTRICT JUDGE